CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 15 2008

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| WANDA WHITESEL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:07CV00030 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MICHAEL J. ASTRUE, ) | By: Hon. Glen E. Conrad |
| Commissioner of Social Security ) | United States District Judge |
| ) | |
| Defendant. ) | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Wanda Whitesel, was born on July 24, 1960. She eventually graduated from high school. Mrs. Whitesel has past relevant work experience as a spin lab technician. She last worked on a regular and sustained basis in February of 2004. Mrs. Whitesel filed an application for disability insurance benefits on June 30, 2004. She alleged that she became disabled for all forms of substantial gainful employment on February 1, 2004, due to pain and

numbness in her left hand and wrist, resulting from a "left wrist cyst" and "bone damage." (Tr. 106). Mrs. Whitesel now maintains that she has remained disabled to the present time. The record reveals that plaintiff met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See, gen., 42 U.S.C. § 423.

Mrs. Whitesel's claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated September 14, 2006, the Law Judge also determined that Mrs. Whitesel is not disabled. The Law Judge found that plaintiff suffers from left wrist disorders that could reasonably be expected to restrict heavy lifting and repetitive motion. The Law Judge then determined that, while Mrs. Whitesel's wrist impairment is severe within the meaning of the regulations, it does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. See 20 C.F.R. § 404.1520(c)-(d).[1] The Law Judge ruled that plaintiff's wrist impairment renders her disabled for performance of all past relevant work roles. The Law Judge concluded, however, that Mrs. Whitesel retains the residual functional capacity to perform a wide range of light work. Specifically, the Law Judge found that Mrs. Whitesel:

> is limited in repetitive use of the left hand, but has no impairment of the dominant right hand that limits gross or fine manipulation. The claimant can lift twenty pounds occasionally and ten pounds frequently. She can stand/walk about six hours in an eight hour workday and can sit about six hours in an eight hour workday. No other significant postural, manipulative, visual, communicative, or environmental limitations are found to exist.

---

[1] The Law Judge also noted that Mrs. Whitesel suffers from mild, transient depression. However, the Law Judge found that this impairment has not caused more than mild limitations for a continuous period lasting for twelve months, and thus, that the impairment is not severe within the meaning of the regulations. (Tr. 17-18). See 20 C.F.R. § 404.1521("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

2

(Tr. 19). Given such a residual functional capacity, and after consideration of plaintiff's age, education, and past work experience, as well as the testimony of a vocational expert, the Law Judge concluded that Mrs. Whitesel can perform other jobs that exist in significant number in the national economy, including but not limited to the light and sedentary jobs of office clerk, receptionist, and general clerk. Accordingly, the Law Judge ultimately concluded that Mrs. Whitesel is not disabled, and that she is not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all administrative remedies, Mrs. Whitesel has now appealed to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion reflects a thorough evaluation of plaintiff's medical problems and the extent to which they affect her ability to work. Although Mrs. Whitesel suffers from a left wrist impairment, substantial

3

evidence supports the Law Judge's determination that this impairment does not prevent her from performing certain specific light and sedentary work roles. Additionally, substantial evidence supports the Law Judge's determination that Mrs. Whitesel does not suffer from a severe emotional impairment.

The medical record reveals that shortly before her alleged onset date of February 1, 2004, Mrs. Whitesel was treated by John C. MacIlwaine, M.D., an orthopedist. Following the initial examination on July 14, 2003, Dr. MacIlwaine noted that plaintiff is right hand dominant, that she complained of ongoing pain and numbness in her left arm, and that the symptoms were aggravated by the repetitive movements required by her job. Dr. MacIlwaine diagnosed plaintiff with left carpal tunnel syndrome and lateral epicondylitis in her left elbow. (Tr. 199-200). On July 31, 2003, Dr. MacIlwaine referred plaintiff for an x-ray examination of her left wrist, which revealed no abnormalities. (Tr. 198).

On August 8, 2003, Mrs. Whitesel underwent an MRI study of her left wrist, which revealed "some ventral subluxation of the radius in relationship with the ulnar with a small amount of fluid in the radial ulnar joint." (Tr. 195). The study also showed a "little bit of subcortical signal intensity change within the lunate possibly representing a mild contusion or early degenerative cyst." (Tr. 195).

On September 3, 2003, plaintiff underwent electromyography and nerve conduction studies of her left and right upper extremities. The studies revealed no abnormalities, including no evidence of cervical radiculopathy and no evidence of a nerve entrapment across either wrist or elbow. (Tr. 180-182).

4

Mrs. Whitesel returned to Dr. MacIlwaine on September 8, 2003. During the examination, plaintiff reported that she was feeling 90 percent better since her initial evaluation. Dr. MacIlwaine recommended that she remain on light duty work. (Tr. 193).

Plaintiff returned for a follow-up evaluation on November 17, 2003. At that time, plaintiff reported that she was feeling 75 percent better since her initial evaluation, and that wearing a wrist splint improved her symptoms. Dr. MacIlwaine discussed additional treatment options with Mrs. Whitesel, but they decided against further studies since her condition had improved. (Tr. 191).

Mrs. Whitesel returned to Dr. MacIlwaine on February 11, 2004. Although she complained of swelling and pain over the ulnar side of her left wrist with increased use of her hand, plaintiff reported that her hand had improved since her last visit. Moreover, plaintiff had normal strength in her hand. Dr. MacIlwaine noted that he offered to send plaintiff for a second opinion, but that she expressed satisfaction with her current treatment plan. Plaintiff was instructed to avoid repetitive range of motion, repetitive gripping, and heavy lifting. (Tr. 190).

On May 12, 2004, Mrs. Whitesel reported that she felt 75 to 80 percent better since her wrist problems began. Dr. MacIlwaine again noted that plaintiff was satisfied with her improvement, and that she wished to defer further testing. (Tr. 188).

Ken Widra, M.D., a psychiatrist, treated plaintiff on three occasions after her alleged onset date. On June 21, 2004, Dr. Widra assessed plaintiff with a Global Assessment of

5

Functioning (GAF) score of 61 to 70,[2] and noted that she was enjoying watching her grandchildren. He continued plaintiff on Effexor, Remeron, and Klonopin. (Tr. 257).

On August 3, 2004, plaintiff underwent a second x-ray examination of her left wrist to rule out the possibility of a cyst. The examination revealed no abnormalities. (Tr. 187). The following day, Mrs. Whitesel returned to Dr. MacIlwaine. Dr. MacIlwaine noted that plaintiff reported that her wrist was 75 to 80 percent better, that she was satisfied with the condition of her wrist, and that she declined additional treatment. (Tr. 186).

On November 19, 2004, Luc Vinh, M.D., a state agency physician, completed a physical residual functional capacity assessment. Based on his review of the existing medical records, Dr. Vinh opined that plaintiff can lift twenty pounds occasionally and ten pounds frequently, stand and/or walk approximately six hours in an eight-hour workday, sit approximately six hours in an eight-hour workday, and engage in unlimited pushing and/or pulling. (Tr. 221). Dr. Vinh also opined that plaintiff has a limited ability to perform fine manipulation with her left hand, due to wrist pain and tenderness. (Tr. 222).

Plaintiff attended counseling sessions with Jean Geiser, LPC, at Augusta Medical Center from October of 2004 until July of 2005. On November 19, 2004, Ms. Geiser completed an initial evaluation form on which she indicated that plaintiff was suffering from depression. Ms. Geiser noted, however, that plaintiff had a current GAF score of 65, and that her highest GAF

---

[2] A GAF score reflects a clinician's judgment of a patient's "overall level of functioning." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition Text Revision, 32 (2000) (DSM-IV-TR). The GAF scale ranges from zero to 100 and "consider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV-TR at 34. A GAF of 61 to 70 indicates "[s]ome mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

6

score for the previous year was 85.[3] (Tr. 285). On November 26, 2004, December 3, 2004, and December 10, 2004, Ms. Geiser indicated that plaintiff had no impairments resulting from her mental health complaints. (Tr. 281-283).

Plaintiff returned to Dr. Widra on December 13, 2004. During the evaluation, plaintiff complained of anxiousness and decreased energy. Dr. Widra again assessed her with a GAF of 61 to 70, and noted that her level of function was the same. (Tr. 256).

Mrs. Whitesel had several counseling sessions with Ms. Geiger in January, February, and March of 2005. While Ms. Geiger noted that she had a severe impairment in January and February, Ms. Geiger indicated that plaintiff had no impairments resulting from her mental health complaints in March. (Tr. 275-278).

Plaintiff underwent a consultative examination by Carl W. Dobson, M.D. on March 26, 2005. (Tr. 227-234). Although plaintiff reported having a bone cyst in her left wrist, Dr. Dobson noted that there was no documentation in her medical records to support her allegation, and that her treating orthopedist had diagnosed her with ulnocarpal impingement. (Tr. 227). Plaintiff also reported that she had a history of depression and anxiety, but that she had experienced "little difficulty with her psychiatric disease," since she began taking psychotropic medications. (Tr. 227-228). On physical examination, plaintiff had some mild swelling and tenderness around the distal portion of the ulna and the medial carpal bone. (Tr. 230). However, plaintiff had full grip strength, full range of motion in her left wrist, and no muscle atrophy. (Tr. 230). Dr. Dobson

---

[3] A GAF of 81 to 90 indicates "[a]bsent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members)." DSM-IV-TR at 34.

7

noted that "it sounds like repetitive motion exacerbates the pain," and that plaintiff "is right-handed which is a good thing that the condition is on the left." (Tr. 230).

On April 12, 2005, Sulaiha Mastan, Ph.D., a state agency psychologist, completed a psychiatric review technique form. (Tr. 235-247). Dr. Mastan opined that plaintiff has a medically determinable mental impairment of depression, but that her impairment is not severe. (Tr. 235, 238). Dr. Mastan emphasized that plaintiff's mild symptoms of depression are medically controlled, that her activities of daily living are adequate for her age and lifestyle, and that "the evidence in file does not support an inability to work." (Tr. 247).

Plaintiff had counseling sessions with Ms. Geiger on April 29, 2005, May 13, 2005, and May 27, 2005. On all three occasions, Ms. Geiger indicated that plaintiff had no impairments resulting from her mental health complaints. (Tr. 271-273).

Plaintiff saw Dr. Widra again on June 6, 2005. Dr. Widra noted that plaintiff's stressors were better, that her level of function was improving, and that she was in an "overall good mood." (Tr. 255). Dr. Widra assessed her with a GAF of 71 to 80.[4] (Tr. 255).

Plaintiff returned to Dr. MacIlwaine on August 29, 2005. Dr. MacIlwaine indicated that he discussed possible treatment options with Mrs. Whitesel, but that she wanted to "leave the hand alone at this time." (Tr. 193).

On June 30, 2006, Tina Judge, a family nurse practitioner, completed a mental impairment questionnaire. (Tr. 296-301). Ms. Judge diagnosed plaintiff with bipolar-affective

---

[4] A GAF of 71 to 80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychological stressors ... no more than slight impairments in social, occupational, or school functioning . . . ." DSM-IV-TR at 34.

8

disorder and assessed her with a GAF of 40.[5] (Tr. 296). Ms. Judge also noted that plaintiff is unable to meet the competitive standards of, or has no useful ability to perform, most mental work-related activities. (Tr. 298).

During the administrative hearing, the Law Judge sought the testimony of Sandra Wells-Brown, a vocational expert. The Law Judge asked the vocational expert whether jobs exist for an individual with the following limitations:

> Let's presume we have a hypothetical person the same age, education, work history as Mrs. Whitesel with presumed limitations that are such that the person as indicated by Dr. Dobson in his examination would be – indicates that the person is right handed and with complaints regarding the left wrist, he indicates that she does not have a strength problem for exam, although she was told to treat it with that. Based on her history, it sounds like repetitive motion exacerbates the pain, so she cannot use it for repetitive motion. And let's presume she's restricted to lifting 20 pounds on an occasional basis, ten pounds on a frequent basis, can[] stand or walk about six hours total in an eight hour day and sit about six hours total in an eight hour day and as I already indicated, her handling the left wrist is limited, but she is right handed. And she has full use of both left hand and right hand, but she's only limited by the repetitive use of the left wrist.

(Tr. 327). In response, the vocational expert testified that it would be possible for an individual with such limitations to perform light and sedentary work as an office clerk, receptionist, or general clerk. (Tr. 328).

Having reviewed the record, the court finds substantial evidence to support the Law Judge's decision that plaintiff's left wrist impairment does not preclude all substantial gainful

---

[5] A GAF of 40 indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. . . ." DSM-IV-TR at 34.

9

activity. The Law Judge fully accounted for any work-related limitations resulting from Mrs. Whitesel's wrist impairment by restricting her to light work that would not require her to use her left hand on a repetitive basis, and the vocational expert was able to identify work that Mrs. Whitesel can perform despite such limitations. The limitations noted by the Law Judge are supported by the reports from plaintiff's treating orthopedist, Dr. MacIlwaine, and the consultative examiner, Dr. Dobson. As previously stated, Dr. MacIlwaine's treatment notes indicate that plaintiff is right hand dominant, that she reported significant improvement in her left wrist over the course of treatment, and that she declined further testing or alternative treatment on several occasions because she was satisfied with the condition of her wrist. Despite mild swelling and complaints of tenderness during her consultative examination, plaintiff had normal strength and range of motion in her upper extremities, no evidence of muscle atrophy, and normal sensory perception. Additionally, electromyography and nerve conduction studies of plaintiff's upper extremities in September of 2003 revealed no abnormalities, and x-rays of plaintiff's left wrist in August of 2004 were normal. Accordingly, substantial evidence supports the Law Judge's determination that Mrs. Whitesel's left wrist impairment does not render her totally disabled.

The court also finds substantial evidence to support the Law Judge's decision that Mrs. Whitesel's symptoms of depression do not significantly limit her ability to do basic work activities, and are thus non-severe. As the Law Judge noted in his opinion, plaintiff only alleged that she was disabled as a result of her left wrist impairment when she filed her application for disability insurance benefits. (Tr. 17, 106). She did not mention any type of emotional impairment such as depression or anxiety. Moreover, plaintiff stated in March of 2005, more

than a year after her alleged onset date, that she felt "good" and that she had experienced "little difficulty with her psychiatric disease," since she began taking psychotropic medication. (Tr. 227-228). Plaintiff's statement is consistent with the report from the state agency psychologist, Dr. Mastan, as well as the relevant treatment notes from Dr. Widra, her treating psychiatrist. As previously stated, Dr. Mastan found that plaintiff's symptoms of depression are not severe, and that they are controlled by psychotropic medication. Likewise, during the relevant time period, Dr. Widra consistently rated plaintiff's symptoms of depression as mild and/or transient.

In assessing the severity of Mrs. Whitesel's emotional impairment, the Law Judge discredited the questionnaire completed by the nurse practitioner, Tina Judge. As the Law Judge explained in his opinion, there is no evidence that Ms. Judge ever personally examined Mrs. Whitesel, and there are no treatment records that support the severe limitations noted in the questionnaire. Although Ms. Judge assessed plaintiff with a GAF score of 40 and opined that plaintiff is essentially unable to perform most mental work-related activities, such extreme findings are unsupported by the evidence of record, including Dr. Widra's treatment notes, Jean Geiser's counseling records, and the plaintiff's own statement that her emotional symptoms are well-controlled by medication. Additionally, Ms. Judge completed the questionnaire in June of 2006, nearly a year after Mrs. Whitesel's last treatment note from Augusta Medical Center, and there is no evidence that Ms. Judge or anyone else at Augusta Medical Center examined or treated plaintiff during the intervening time period. Accordingly, the court concludes that the Law Judge's decision to discount the questionnaire completed by Ms. Judge is supported by the record.

11

Having found substantial evidence to support the Commissioner's determination that Mrs. Whitesel's wrist impairment does not render her totally disabled and the determination that her symptoms of depression are non-severe, the court concludes that the Commissioner's final decision must be affirmed. In affirming the Commissioner's final decision, the court does not suggest that Mrs. Whitesel is totally free of pain and discomfort. However, it must be recognized that the inability to work without any subjective complaints does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996). It appears to the court that the Administrative Law Judge gave full consideration to all of the subjective factors in adjudicating plaintiff's claims for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 15th day of January, 2008.

_____
United States District Judge